IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DARREN MITCHELL, | :: | CIVIL ACTION NO. |
| GDC ID # 1000144526, | :: | 1:09-CV-00714-RWS |
| Plaintiff, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| JUDY ZIEGLER, | :: | PRISONER CIVIL RIGHTS |
| Computation Section/Website | :: | 42 U.S.C. § 1983 |
| Administrator, | :: | |
| Defendant. | :: | |

## ORDER AND OPINION

Now before the Court are Plaintiff Darren Mitchell's complaint [1], as amended [5, 19]; Defendant Judy Ziegler's Motion to Dismiss [64], with Memorandum of Law in Support [64-1]; Mitchell's response [70]; Ziegler's reply [71]; and Mitchell's motion to amend his complaint to add two named defendants [73]. On September 12, 2007, Mitchell began a five-year sentence in a Georgia prison for the crime of theft by deception in Douglas County, Georgia. On or about October 27, 2009, after he had served less than three years of that sentence, Mitchell was released from state prison in Georgia and taken into the custody of the State of Louisiana, where he remains incarcerated. (See Compl. [1] at p. 5 of 11; Pl.'s Address Change Notices [54, 57-58, 67].)

## I. Procedural History

Mitchell originally brought this civil action in the United States District Court for the Southern District of Georgia. That court dismissed all named defendants except Ziegler and transferred the case to this court [28], which then dismissed all but Mitchell's due process claim regarding erroneous information displayed on the Georgia Department of Corrections (GDC or GDOC) website. (Order of Sept. 16, 2009 [49] at 7 *et seq.*) The court noted Mitchell's allegations that Ziegler

> (1) oversees the GDOC website; (2) "it is her legal duty to insure that information attached to an individual prisoner is <u>his</u> information and that it is correct and factual"; (3) "she allowed [his] data to be combined with that of the sex offender Darren Patrick Mitchell"; (4) [his] erroneous designation as a sex offender on the GDOC website has subjected him to ["grave risk of life and/or limb from actions from fellow prisoners"] . . . as well as possible future assaults . . . upon [his] release from prison; and (5) his designation denied him the opportunity to obtain parole and to serve his sentence in the less restrictive environment of a "work camp."

(<u>Id.</u> at 8; <u>see</u> 2nd Am. Compl. [19] at 15-18.)[1] Mitchell also alleged that "Jenny," a "young lady" to whom he had written at the suggestion of a fellow inmate, asking her to be his pen pal, had refused his request because she "looked [him] up on the GDC World Wide Website [and] saw he had been labelled [sic] a sex offender." (2nd Am.

---

[1] Page references to Mitchell's second amended complaint [19] are to the CM/ECF page numbers, not to Mitchell's own numbering scheme.

2

Compl. at 5, 18.) Mitchell seeks injunctive relief, i.e., a posting on the GDC website retracting and correcting the prior erroneous posting, "so that those World Wide viewers who viewed his photo and thought him a threat to themselves and/or their families and children will know otherwise." He also seeks ten million dollars in punitive damages and "an equation to determine compensatory damages." (Id. at 29-30.)

## II.     Ziegler's Motion to Dismiss and Mitchell's Response

When considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a federal court accepts as true "all facts set forth in the plaintiff's complaint" and "limits its consideration to the pleadings and exhibits attached thereto." Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288 n.11 (11th Cir. 2005) (noting that "federal courts view the allegations of the complaint in the light most favorable to the plaintiff . . . and accept all reasonable inferences therefrom") (internal quotations omitted).

Ziegler argues for dismissal on the following grounds: (1) Mitchell's claim to injunctive relief is now moot because the GDC website no longer displays his offender profile and will not do so again until it is corrected to eliminate erroneous

3

information;[2] (2) Mitchell has failed to state a claim against her because, *inter alia,* "an accidental/negligent deprivation cannot establish the basis for a violation of due process"; (3) she is entitled to qualified immunity; and (4) Mitchell can not obtain compensatory or punitive damages because he has not alleged the necessary prerequisite of a physical injury. (Mem. Law Supp. Def.'s Mot. Dismiss at 4-15.)

Mitchell responds by contending that he was injured by the "climate of carelessness" Ziegler allowed to develop with respect to the GDC website, but acknowledges that to establish a Fourteenth Amendment due process claim for relief, he must allege "stigma plus," i.e., something more than damage to his reputation. (Pl.'s Resp. at 11-14.)[3] He argues, therefore, that he was "stigmatized in connection with a denial of a right or status previously recognized under state law" – i.e., that the GDC "effectively denied him the opportunity to associate with a friend" (ostensibly his prospective pen pal) and "deprived [him] of the fair play guaranteed by the due process of law." He notes that the Supreme Court has held that "freedom to engage in

---

[2] In February 2009, Mitchell acknowledged that no later than February 19, 2009, GDC personnel "sundered" his picture from the conviction data for sex offender Darren P. Mitchell. (Pl.'s Decl. [33] ¶ 11.)

[3] Page references to Mitchell's response to the motion to dismiss are to Mitchell's own numbering scheme, not to the CM/ECF page numbers.

4

association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the due process clause of the Fourteenth Amendment." (Id. at 16, 18-19.) Mitchell also claims that his substantive due process right to privacy has been invaded by his wrongfully having been labeled a sex offender. (Id. at 19-20.)

Mitchell contends that he sustained a physical injury as a result of Ziegler's unconstitutional actions because "the stigma to his reputation . . . physically inflicted [sic] him mentally and emotionally," causing him "loss of appetite, stressing, lost of energy [sic], and sleepless nights" worrying "about his family and mainly his kids who have now disassociated themselves completely from [him] thinking he is actually the legitimately classified sex offender due to the Website posting."(Id. at 28-29.) Mitchell "further argues that he cannot go out in public places feeling safe knowing people today believe what they see especially on the internet websites." (Id. at 31.)

In sum, Mitchell argues that his claim for injunctive relief is not moot because there is no guarantee that the erroneous sex offender information will not reappear attached to his photograph on the GDC website;[4] that Ziegler is a "principal architect"

---

[4] The GDC website now has an entry for Darren Mitchell, without photograph, that lists his only crime of conviction as theft by deception in Douglas County, See www.dcor.state.ga.us at "Georgia Offender Search" for GDC ID # 1000144526. The entry does not include a listing for aggravated sodomy, as it did previously. (See Compl. Attachs. [1-1] Ex. 3.)

5

of the violation of his due process rights because, even if she did not create the erroneous information on the GDC website, she knew about it and did nothing to correct it; and that he "was indeed classified as [a sex offender] and subjected . . . to provisions of that classification demonstrated by [his] immediate transfer from a 'county work camp' to a 'state prison' per departmental policy." (Id. at 32-33.)

### III.  Discussion

#### A.  Individual and Official Capacity Claims

A § 1983 plaintiff may sue a state official in either her individual or official capacity. Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989) (stating that, "[i]n cases where a complaint does not specify clearly whether officials were sued in their official capacity, the course of proceedings will indicate the nature of the liability sought to be imposed") (internal quotations omitted). There are, however, significant limitations on potential § 1983 liability for state officials and the agencies that employ them, although "a state official sued in [her] official capacity is a person for purposes of § 1983 when prospective relief, including injunctive relief, is sought." Edwards v. Wallace Community College, 49 F.3d 1517, 1524 (11th Cir. 1995). Nevertheless, for the official to be liable in such an action, a state policy or custom must have been a "moving force" behind the alleged constitutional deprivation. See id. at 166 (stating

that "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law"). And, of course, there must have been a constitutional deprivation.

### B.     Qualified Immunity from Individual Capacity Claims

"Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (noting that "[b]ecause qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible") (internal quotations omitted). To warrant qualified immunity, a public official must have been "acting within the scope of [her] discretionary authority when the allegedly wrongful acts occurred." Id. at 1194.

> Once the defendant establishes that [s]he was acting within [her] discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. . . . [A] court must ask, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"

Id. (Citation omitted).

"If a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must [also] determine whether the right was clearly established." Id. (internal quotations omitted). A right is clearly established when it would be clear to a reasonable official that her conduct is unlawful under the circumstances. Bashir v. Rockdale County, 445 F.3d 1323, 1330 (11th Cir. 2006). In general, to determine if a public official had "fair and clear notice" that her actions violated the Constitution, a court must examine "case law existing at the time of the violation" – "decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state" – involving facts "similar to the case at hand." Id. at 1331 & n.9.

### C.     Procedural and Substantive Due Process

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). There are two types of § 1983 due process claims – procedural and substantive. In order to establish a procedural due process violation, a plaintiff must show that he has been deprived of life, liberty, or property without due process of law. Bass v. Perrin, 170 F.3d 1312,

8

1318 (11th Cir. 1999). "[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Behrens v. Regier, 422 F.3d 1255, 1259 n.9 (11th Cir. 2005). "The substantive component of the Due Process Clause protects those rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty," or, alternatively, "those rights created by the Constitution." Id. at 1264 (internal quotations omitted). "Officials acting under the color of state law violate the substantive component of the Due Process Clause only when their conduct can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Peterson v. Baker, 504 F.3d 1331, 1336 (11th Cir. 2007) (internal quotations omitted). Moreover, "Section 1983 must not be used as a font of tort law to convert state tort claims into federal causes of action. . . . [E]ven intentional wrongs seldom violate the Due Process Clause." Id. (citation and internal quotations omitted). See Porter v. White, 483 F.3d 1294, 1307 (11th Cir. 2007) (quoting Daniels v. Williams 474 U.S. 327, 328 (1986), for proposition that "Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property").

9

In the defamation context, the Supreme Court has "held that a person's interest in reputation alone, apart from some more tangible interests such as employment, is not a protected liberty interest within the meaning of the due process clause." Smith v. Siegelman, 322 F.3d 1290, 1296 (11th Cir. 2003) (internal quotations omitted). "To establish a liberty interest sufficient to implicate the fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law. In other words, a 'stigma-plus' is required to establish a constitutional violation." Id. at 1296-97 (citation, footnote, and internal quotations omitted). See also Behrens, 422 F.3d at 1259-61 (discussing stigma-plus test and noting that for plaintiff to prevail on procedural due process claim alleging that he was stigmatized by state action, he "must show [loss of] alleged right or status [that] has been previously recognized and protected under state law").

In Smith, the Eleventh Circuit reversed the district court's denial of qualified immunity to the defendants because the plaintiff had not alleged that he "was denied any right or status other than his not being branded a child sexual abuser." Id. at 1297. The Eleventh Circuit agreed with the district court that "Smith's employment and custody rights in the future could be affected adversely due to the information on the

10

[Alabama Department of Human Resources Central] Registry [on Child Abuse and Neglect], but the district court's conjecture overlook[ed the Supreme Court's] insistence that reputational damage alone is insufficient to constitute a protected liberty interest." Id. at 1297-98 (noting the following Supreme Court statement: "Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from injury to their reputation. But *so long as such damage flows from injury caused by the defendant to a plaintiff's reputation*, it may be recoverable under state tort law but it is not recoverable in a [federal civil rights] action.") (footnote omitted).[5]

---

[5] The Smith court distinguished Kirby v. Siegelman, 195 F.3d 1285, 1292 (11th Cir. 1999) (holding that "the stigmatizing effect of being classified as a sex offender [without more] constitutes a deprivation of liberty under the Due Process Clause"), by stating that "precedent of the Supreme Court and this court clearly indicate that stigmatization by itself is insufficient to rise to the level of a protected liberty interest." Smith, 322 F.3d at 1296 (citing Paul v. Davis, 424 U.S. 693, 701 (1976), for proposition, noted above, that "a person's interest in reputation alone . . . is not a protected liberty interest within the meaning of the due process clause"). See Grennier v. Frank, 453 F.3d 442, 445 (7th Cir. 2006) (reconciling Kirby, and similar holdings, with Davis by concluding that, although these decisions "contain some language to [the] effect" that "the stigma of being called a 'sex offender' is enough by itself to deprive a person of liberty or property," the rulings invoke the due process clause based on a "liberty or property interest stemming from statutes and regulations, and not the 'sex offender' label alone").

**D.     Analysis**

Here, Mitchell claims that because his reputation has been damaged by the erroneous offender information that formerly appeared on the GDC website, he has suffered the following ill effects: he lost the opportunity to associate with a prospective pen pal; he lost the affection of his children; he lost the opportunity to serve his Georgia sentence in a county work camp; at one time, at least, he feared that he would lose the opportunity for parole; and he fears being attacked by others.[6] A Georgia prisoner, however, does "not have a liberty interest in parole, transitional centers, or work incentive credits." Biester v. Lanier, 249 F. App'x 782, 783 (11th Cir. 2007). See Meachum v. Fano, 427 U.S. 215, 225 (1976) (stating that "the Due Process Clause [does not] in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe

---

[6] It appears that Mitchell's fear of being denied parole was unfounded (see Notice [54]), as was his fear of being attacked by fellow inmates in Georgia.

12

rules."); Kramer v. Donald, 286 F. App'x 674, 676 (11th Cir. 2008) (citing Meachum for proposition that Georgia prisoner "has no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison," and Sultenfuss v. Snow, 35 F.3d 1494, 1499-1503 (11th Cir. 1994), for proposition that "Georgia inmate has no liberty interest in parole").

Moreover, Mitchell has not alleged, and the Court is not aware of, a right to the private affection of others – be they prospective pen pals or one's own children – created by state law or by the United States Constitution. Accordingly, to the extent that Mitchell has experienced, to date, any ill effects from the erroneous information on the GDC website, none of those effects arose from the "denial of a right or status previously recognized under state law," but, instead, "flow[ed] from injury . . . to [his] reputation," which, standing alone, is not actionable under § 1983. See Siegelman, 322 F.3d at 1296-97. Mitchell's fear of possible future attacks, a fear that is highly speculative at best, also flows from the alleged injury to his reputation. Furthermore, based on the foregoing, it is apparent that Mitchell has not alleged any intentional act by Ziegler that violated his fundamental rights or that was so shocking to the conscience as to support a viable substantive due process claim. See Baker, 504 F.3d at 1336; Behrens, 422 F.3d at 1264. In sum, Mitchell has not stated a § 1983 claim

13

under the Due Process Clause of the Fourteenth Amendment, either procedural or substantive. Therefore, his claims against Ziegler fail, whether he has sued her in her official or her individual capacity.[7]

## IV. Conclusion

For the foregoing reasons, Ziegler's motion to dismiss Mitchell's complaint [64] is **GRANTED**; Mitchell's motion to amend his complaint to name two additional defendants [73] is **DENIED**; and this action is **DISMISSED**.

**IT IS SO ORDERED**, this  12th  day of August, 2010.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

---

[7] Moreover, it is undisputed that Ziegler was acting within her discretionary authority in supervising the input and maintenance of the information on the GDC website at issue here. (See 2nd Am. Compl. at 5; Mem. Law Supp. Mot. Dismiss at 12; Pl.'s Resp. at 4 (alleging that Ziegler "oversees" GDC's "computation section," and through a "climate of carelessness" allowed erroneous information to appear on the GDC website).) Accordingly, it is Mitchell's burden to establish that Ziegler violated his constitutional rights in the course of exercising her discretionary authority. See Ferraro, 284 F.3d at 1194. As the foregoing discussion demonstrates, however, Mitchell has not established that Ziegler violated his Fourteenth Amendment due process rights, intentionally or otherwise. Therefore, Ziegler, in her individual capacity, is qualifiedly immune from Mitchell's claims.

AO 72A
(Rev.8/82)